**In re Mark L. WINK, Sharon J. Wink, Debtors.**

**Bankruptcy EU7–91–00120.**

United States Bankruptcy Court, W.D. Wisconsin.

Jan. 15, 1992.

L.R. Reinstra, New Richmond, Wis., for debtors.

Thomas R. Schumacher, Baldwin, Wis., for 1st Nat. Bank.

## MEMORANDUM OPINION, FINDINGS OF FACT, AND CONCLUSIONS OF LAW

THOMAS S. UTSCHIG, Bankruptcy Judge.

This matter comes before the Court on a motion of the debtors to avoid certain liens of the First National Bank of Baldwin pursuant to 11 U.S.C. § 522(f). The bank has objected to the debtors' motion. The debtors are Mark L. and Sharon J. Wink and they are represented by L.R. Reinstra. First National Bank of Baldwin (Bank) is represented by Thomas R. Schumacher.

The debtors and the Bank have been in a debtor-creditor relationship since September of 1984. At that time the Bank approved a $45,000 line of credit for Mark Wink to enable him to purchase machinery and a dairy herd. Over the course of the next six years the Bank made numerous other loans to the debtors to purchase cows and various items of machinery. There were also numerous renewals and consolidations of the various loans; the last one occurred on February 17, 1990, and was in the amount of $55,567.92.

The debtors filed their petition for relief under Chapter 7 of the Bankruptcy Code on January 16, 1991. The parties stipulated to an auction of the machinery conducted by the Bank and further agreed that the debtors would preserve their right

to file a lien-avoidance motion pursuant to 11 U.S.C. § 522(f) for property claimed exempt by the debtors. The auction was held on March 13, 1991, and the net proceeds from the sale of the debtors' collateral were $24,581.62.

The debtors filed the present motion on May 20, 1991, claiming the first $15,000 in proceeds from their equipment and inventory as exempt under Wisconsin law. In an objection filed May 30, 1991, the Bank asserted that the debtors were not entitled to any exemption in the proceeds under Wisconsin law. In its original brief filed on August 1, 1991, the Bank also asserted that it had held a purchase money security interest in the auctioned machinery and that the debtors were therefore not entitled to lien avoidance under § 522(f)(2). The Bank further alleged that the debtors were no longer engaged in the business of farming and that they were thus not entitled to any exemption on that basis as well.

In their responsive brief filed on September 5, 1991, the debtors denied that the Bank retained a purchase money security interest and refuted its allegation that they were no longer farming.

The parties subsequently stipulated, however, to dismissal of the Bank's objections based on the debtors' occupational status and on the alleged purchase-money nature of its security interest. Pursuant to this stipulation, these objections were dismissed by order of the Court dated October 17, 1991. The only remaining objection, therefore, is the one based on Wisconsin's exemption law and its interplay with § 522(f) of the Bankruptcy Code.

Turning to the statutes relevant to this matter, the debtors' motion is made pursuant to 11 U.S.C. § 522(f), which provides:

(f) Notwithstanding any waiver of exemptions, the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is—

(1) a judicial lien; or

(2) a nonpossessory, nonpurchase-money security interest in any—

(A) household furnishings, household goods, wearing apparel, appliances, books, animals, crops, musical instruments, or jewelry that are held primarily for the personal, family, or household use of the debtor or a dependent of the debtor;

(B) implements, professional books, or tools, of the trade of the debtor or the trade of a dependent of the debtor; or

(C) professionally prescribed health aids for the debtor or a dependent of the debtor.

11 U.S.C. § 522(f) (West 1991). There is no dispute that the proceeds at issue here are from the sale of the debtors' farm machinery and that the machinery constituted "[i]mplements, ... or tools, of the trade of the debtor...." Nor, as noted, is there a dispute as to the nonpurchase-money status of the Bank's security interest. The precise issue before the Court is whether a lien can be avoided under § 522 when the applicable state law purports to define lien-encumbered property as non-exempt. The applicable state exemption provision is § 815.18(3)(b) of the Wisconsin statutes. It states:

(3) Exempt property. The debtor's interest in or right to receive the following property is exempt, except as specifically provided in this section and ss. 70.20(2), 71.91(5m) and (6), 74.55(2) and 102.28(5):

.     .     .     .     .

(b) *Business and farm property.* Equipment, inventory, farm products and professional books used in the business of the debtor or the business of a dependent of the debtor, not to exceed $7,500 in aggregate value.

WIS.STAT.ANN. § 815.18(3)(b) (West Supp.1991).[1] "Aggregate value" is defined as "[t]he sum total of the debtor's equity in the property claimed exempt." *See* WIS. STAT.ANN. § 815.18(2)(a) (West Supp. 1991). "Equity" is in turn defined as "[t]he fair market value of the debtor's

_____

1. The exceptions noted in the statute are inapplicable to the present case.

interest in property, less the valid liens on that property." *See* WIS.STAT.ANN. § 815.18(2)(g) (West Supp.1991). "Exempt" is defined as "[f]ree from any lien obtained by judicial proceedings and is not liable to seizure or sale on execution or on any provisional or final process issued from any court, or any proceedings in aid of court process." *See* WIS.STAT.ANN. § 815.18(2)(h) (West 1991). One other subsection is relevant here—subsection 12, titled "[l]imitations on exemptions." It states that

> [n]o property otherwise exempt may be claimed as exempt in any proceeding brought by any person to recover the whole or part of the purchase price of the property or against the claim or interest of a holder of a security interest, land contract, condominium or homeowners association assessment or maintenance lien or both, mortgage or any consensual or statutory lien.

*See* WIS.STAT.ANN. § 815.18(12) (West Supp.1991).

The Bank cited all of these provisions in its brief and argues that, since the debtors had no equity in the farm machinery (and therefore none in the proceeds as well), the debtors are not entitled to any exemption in those proceeds under Wisconsin law. Since the proceeds are not exempt under Wisconsin law, the argument continues, the Bank's lien does not "[i]mpair an *exemption* to which the debtor would have been entitled ..." pursuant to § 522(f). The Bank emphasized in its reply brief that

> [its] argument ... *is not*, if the debtor has no equity in the property then lien avoidance under 11 U.S.C. § 522(f)(2)(B) is not possible. The argument made by the creditor is that the interest of the debtor in property is only exempt to the extent that the interest meets the definition of exemption contained in the statute. Second, a debtor may only avoid the fixing of the lien on property to the extent it impairs such exemption.

*See Reply Brief in Opposition to Debtors' Motion to Avoid Liens Under 11 U.S.C. § 522(f)* at 1.

Elsewhere the Bank argues that the Wisconsin definition of its "exemptions" does not prohibit lien avoidance, since Wisconsin has not "opted out" of the federal exemptions in 11 U.S.C. § 522(d) and the debtors therefore have the alternative of choosing the federal exemptions. A Wisconsin debtor choosing these exemptions, the argument concludes, could thus lien avoid pursuant to § 522(f).

Reduced to its essentials, then, the Bank asserts that it is permissible for a state to define its exemptions in such a way so as to preclude lien avoidance under § 522(f) as to liens on property in which the debtor has no equity, *so long as* the state has not "opted out" of the federal exemptions— where lien avoidance on such property would be permitted.

As support for its argument, the Bank cites two recent Supreme Court cases— *Owen v. Owen*, — U.S. ——, 111 S.Ct. 1833, 114 L.Ed.2d 350 (1991) and *Farrey v. Sanderfoot*, — U.S. ——, 111 S.Ct. 1825, 114 L.Ed.2d 337 (1991).

■ Having considered the arguments of the Bank and the debtors' response, the Court notes initially that the Bank's arguments are not without at least partial support in the case law. Several courts have held that states may define their exemptions in such a way so as to effectively "opt out" of the lien avoidance provisions of § 522(f). *See, e.g., Giles v. Credithrift of Am., Inc. (In re Pine)*, 717 F.2d 281 (6th Cir.1983); *McManus v. AVCO Fin. Services (In re McManus)*, 681 F.2d 353 (5th Cir.1982); *Alu v. State of New York Dep't of Taxation & Fin.*, 41 B.R. 955 (E.D.N.Y. 1984). A majority of courts have held, however, that a state may not effectively "opt out" of the lien avoidance provision merely by limiting state-law exemptions to unencumbered property. *See, e.g., Owen v. Owen*, — U.S. ——, 111 S.Ct. 1833, 114 L.Ed.2d 350 (1991); *Snow v. Green (In re Snow)*, 899 F.2d 337 (4th Cir.1990), *cert. denied, Green v. Snow*, — U.S. ——, 111 S.Ct. 2256, 114 L.Ed.2d 709 (1991); *AETNA Fin. Co. v. Leonard (In re Leonard)*, 866 F.2d 335 (10th Cir.1989); *Brown v. Dellinger (In re Brown)*, 734 F.2d 119 (2nd Cir.

1984); *Maddox v. Southern Discount Co.* (*In re Maddox*), 713 F.2d 1526 (11th Cir. 1983); *Heights Fin. Corp. v. Vaughn* (*In re Vaughn*), 67 B.R. 140 (Bankr.C.D.Ill. 1986).

The Court has considered the aforementioned judicial authority as well as the policy considerations at issue here and decides to join the majority view. The Court holds that a state may not, in effect, "opt out" of the right to lien avoidance pursuant to 11 U.S.C. § 522(f) by defining its state-law exemptions to include only unencumbered property. The Court reaches this result for several reasons.

First, the Court interprets the recent Supreme Court case of *Owen v. Owen* as being dispositive of this issue. That case involved a Florida debtor's attempt to avoid a judgment lien of his ex-wife on his homestead in his Chapter 7 bankruptcy case. The Florida homestead exemption statute at issue had been amended in 1985 in such a way so as to qualify the debtor's condominium as a homestead. The ex-wife's lien had attached prior to that amendment, however, and the exemption statute had been interpreted to exclude from its protection property encumbered by liens that existed before the property acquired homestead status. The debtor-husband successfully claimed the homestead exemption, but the bankruptcy court refused to void the ex-wife's lien, citing interpretations of the state constitution holding the exemption inapplicable to pre-existing liens. This decision was affirmed by the district court, *Owen v. Owen* (*In re Owen*), 86 B.R. 691 (M.D.Fla.1988); and the court of appeals, 877 F.2d 44 (11th Cir.1989). The Supreme Court reversed and remanded and stated unequivocally that § 522(f) is to be interpreted to allow the avoidance of any lien that impairs an exemption to which the debtor would have been entitled if the lien had not existed. *Owen,* —— U.S. at —— ——, 111 S.Ct. at 1837, 114 L.Ed.2d at 358–59. The Supreme Court stated that

> [t]he baseline, against which impairment is to be measured, [is] not an exemption to which the debtor "*is* entitled" but one to which he "*would have been* entitled." ... "Would have been" *but for what?*

The answer given ... has been *but for the lien at issue,* and that seems to us correct. ... We have no doubt, then, that the lower courts' unanimously agreed-upon manner of applying § 522(f) to federal exemptions—ask first whether avoiding the lien would entitle the debtor to an exemption, and if it would, then avoid and recover the lien—is correct.

*Id.* at —— ——, 111 S.Ct. at 1837, 114 L.Ed.2d at 359–60 (emphasis in original). The Supreme Court went on to state that the same interpretation of § 522(f) should be adopted for the state exemptions, noting that "[n]othing in the text of § 522(f) remotely justifies treating the [federal and state] exemptions differently." *Id.* at ——, 111 S.Ct. at 1838, 114 L.Ed.2d at 360.

The *Owen* case thus stands for the proposition that judicial liens can be avoided under § 522(f) in spite of the fact that a state has defined exempt property so as to exclude lien-encumbered property. The Bank in the present case seeks to distinguish *Owen* on the grounds that it addressed judicial liens, while a nonpurchase money security interest is at issue here. The Court finds this distinction meaningless as to the applicability of *Owen* to the present facts. Nothing in the language of § 522(f) indicates any basis whatsoever for distinguishing subsection (1)—judicial liens, from subsection (2)—non-possessory, nonpurchase money security interests. The two subsections are separated by the conjunction "or" indicating that both types of liens can be avoided. *See* 11 U.S.C. § 522(f) (West 1991). Other courts have also interpreted *Owen* as applying to the nonpurchase money-security-interest alternative of § 522(f)(2). *See, e.g., In re Kelly,* 133 B.R. 811, 813 (Bankr.N.D.Tex.1991); *In re Sullins,* 135 B.R. 288, 290 (Bankr. S.D.Ohio 1991).

■ Second, the Court believes the statutory language of § 522(f) clearly mandates this result. As already noted in the quoted citations from *Owen,* that provision states that the debtor may avoid a lien which impairs an exemption "[t]o which the debtor *would have been* entitled under sub-

section (b) of this section...." *See* 11 U.S.C. § 522(f) (West 1991) (emphasis added). This Court fully agrees with the majority view as espoused by *Owen*—that the proper inquiry under that provision is whether a debtor would be entitled to an exemption *but for* the existence of the lien. If so, then that lien can be avoided. *See Owen*, — U.S. at ——, 111 S.Ct. at 1838, 114 L.Ed.2d at 360; *In re Leonard*, 866 F.2d 335, 336–37 (10th Cir.1989).[2]

Third, this interpretation of § 522(f) is supported by the legislative history of that provision.

> Subsection (f) [of § 522] protects the debtor's exemptions, his discharge, and thus his fresh start by permitting him to avoid certain liens on exempt property. The debtor may avoid a judicial lien on any property to the extent that the property *could have been exempted in the absence of the lien,* and may similarly avoid a nonpurchase-money security interest in certain household and personal goods....

H.Rep. No. 595, 95th Cong., 1st Sess. 362, *reprinted in* 1978 U.S.C.C.A.N. 5787, 6318 (emphasis added); S.Rep. No. 989, 95th Cong., 2d Sess. 76, *reprinted in* 1978 U.S.C.C.A.N. 5787, 5862. *See also In re Leonard* 866 F.2d 335, 337 (10th Cir.1989).

Fourth, policy concerns further support the result the Court reaches. Adequate exemptions play a vital role in providing the individual debtor with a fresh start—one of the fundamental policies behind the entire Bankruptcy Code. The right to lien avoid has been likened to a "super-exemption" which was intended to protect the debtor from security interests that would otherwise make the exemption worthless because there is no equity in the property. *See* Clark, *The Law of Secured Transactions Under the Uniform Commercial Code* para. 12.05[10][a] at 12–72 (2nd ed.

1988). Allowing states to effectively circumvent a debtor's rights to this "super exemption" through restrictive state-law exemption definitions would thwart an important federal policy—the fresh start of the rehabilitated debtor.

Fifth, the Bank's argument that Wisconsin debtors have the option of choosing the federal exemptions and can still lien avoid on that basis is equally unavailing. This argument, while creative, finds absolutely no support in the Bankruptcy Code nor the relevant case law. As already noted, the Supreme Court in *Owen* established unequivocally a debtor's right to lien avoid in cases involving either federal or state-law exemptions. — U.S. at ——, 111 S.Ct. at 1838, 114 L.Ed.2d at 360. The Bank in its brief correctly notes that Florida [the state involved in *Owen* ] had "opted out" of the federal exemptions. The Supreme Court made no reference to this fact, however, when it recognized a debtor's right to lien avoid under either federal or state exemptions. *See Owen*, — U.S. ——, 111 S.Ct. 1833, 114 L.Ed.2d 350 (1991). A thorough reading of *Owen* makes it clear that the fact that Florida is an "opt out" state was completely irrelevant to the Supreme Court in reaching the result it did. Other courts addressing the same issue in non-"opt out" states like Wisconsin, moreover, have also held that a debtor can lien avoid on property which would be exempt but for the lien, in spite of state-law restrictions limiting exemptions to unencumbered property. *See, e.g., In re Kelly*, 133 B.R. 811 (Bankr. N.D.Tex.1991).

■ For these reasons, then, the Court holds that Wisconsin may not effectively "opt out" of the federal lien avoidance provision by limiting its state-law exemptions to unencumbered property. Wisconsin has not expressly done so; it is the Bank's interpretation of Wisconsin law which, if

---

**2.** The *Leonard* court noted further that

Any other reading of § 522(f) would make the language meaningless and would lead to an absurd result. If § 522(f) were to be read as allowing the debtor to avoid a lien only on the debtor's equity in the exempt property, to which the lien would not ultimately attach under any circumstances, it would totally disregard the lien avoidance language set forth in § 522(f). In other words, if Appellant's construction of § 522(f) were to be adopted, then as long as a security interest exists, the debtor would never be entitled to avoid the lien.

*In re Leonard,* 866 F.2d 335, 337 (10th Cir.1989).

followed, would lead to this result for debtors choosing state-law exemptions and seeking to lien avoid on them. The Court refuses to so interpret Wisconsin law. Nor does the result reached herein necessitate invalidating any of Wisconsin's exemption provisions. Those provisions can be reconciled with the Bankruptcy Code. The state of Wisconsin is free to structure its exemption law as it sees fit, even including defining exempt property as property unencumbered by any lien. *See* WIS.STAT.ANN. § 815.18(2)(h) (West Supp.1991). Many other states have similarly limited their exemptions. *See* 7 *Collier on Bankruptcy* 859 (15th ed. 1991). But in cases involving § 522(f) of the Bankruptcy Code, federal law directs a court to ask whether a debtor would be entitled to a particular exemption under applicable state law *but for the existence of a lien.* In doing this in the present case, there is no question that, but for the Bank's security interest, the debtors would each be entitled to an exemption of $7,500 in farm machinery, or $15,000 total, pursuant to WIS.STAT.ANN. § 815.-18(3)(b), the exemption for business and farm property. *See* WIS.STAT.ANN. § 815.18(3)(b) (West Supp.1991). In non-bankruptcy cases not involving such federal-law mandates as § 522(f), a Wisconsin debtor would only be entitled to an exemption of $7,500 in equity in business or farm property. Other courts have reconciled state exemption laws very similar to the Wisconsin provisions at issue here with the federal law of 11 U.S.C. § 522(f) in the same manner.[3] *See, e.g., AETNA Fin. Co. v. Leonard, (In re Leonard )*, 866 F.2d 335, 338 (10th Cir.1989); *In re Weiss*, 51 B.R. 224, 226–27 (D.Colo.1985); *Heights Fin. Corp. v. Vaughn (In re Vaughn )*, 67 B.R. 140, 142–43 (Bankr.C.D.Ill.1986).

For these reasons, then, the Bank's objection to the debtors' motion for lien avoidance pursuant to 11 U.S.C. § 522(f) is denied. Accordingly, the debtors' motion to avoid the Bank's liens to the extent of

$15,000 in the proceeds from the auction of the farm machinery is granted.

This decision shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 and Rule 52 of the Federal Rules of Civil Procedure.

---

3. One such court reconciled a Colorado exemption statute essentially the same as the Wisconsin statute at issue here by stating that "[s]ection 522(f), in effect, *creates* equity equal to the amount that could be exempted if the security interest did not exist." *See Redin v. Fidelity Fin. Services (In re Redin )*, 14 B.R. 727, 729 (Bankr. D.Colo.1981) (emphasis in original).